UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-14424-CIV-MAYNARD

WENDY WOPSHALL,

    Plaintiff,

v.

TRAVELERS HOME & MARINE INS. CO.,

    Defendant.
_____/

### ORDER ON PENDING MOTIONS (DE 1-2, 8 & 13)
### and
### ORDER REQUESTING UPDATED JOINT SCHEDULING REPORT

**THIS CAUSE** comes before this Court upon the Plaintiff's Motion for Leave to Amend Complaint (which begins at page 161 of DE 1-2), Motion to Remand (DE 8), and Amended Rule 11(c)(2) Motion for Sanctions (DE 13). Having reviewed the Motions, their respective Responses and Replies, and the Plaintiff's Notice of Filing Supplemental Authority (DE 21), this Court finds as follows:

### BACKGROUND

1. Underlying this lawsuit is a motor vehicle accident that occurred on February 3, 2016. A third-party driver caused the accident, and the victim of that accident, the Plaintiff, is seeking insurance benefits. National General insured the third party tortfeasor with a $100,000 bodily injury policy. Florida law, the Defendant argues, makes the tortfeasor's insurer the

primary source of coverage. The Defendant insured the Plaintiff with a $100,000 uninsured/underinsured motorist ("UM") policy. Florida law, the Defendant continues, makes the UM insurer the secondary source of coverage, covering those damages left after the tortfeasor's insurer pays. See § 627.727(1), Fla. Stat., and Neff v. Prop. & Cas. Ins. Co., 133 So.3d 530, 533 (Fla. 2nd DCA 2013).

2. On June 12, 2017 the Plaintiff sent 600 pages of medical records and medical bills totaling $147,000 to the Defendant. The Plaintiff asked the Defendant to pay the full $100,000 UM policy benefit. On June 26, 2017 the Defendant waived its subrogation rights and gave the Plaintiff permission to recover directly from the tortfeasor's insurer. However the Defendant refused to pay the full UM policy benefit.

3. The Plaintiff settled with the tortfeasor. The details of the Plaintiff's settlement with the tortfeasor are unknown. Neither party expressly says how much the tortfeasor's insurer paid. The implication, however, is that the tortfeasor's insurer paid the Plaintiff the full $100,000 benefit of his bodily injury liability insurance policy.

4. The Plaintiff filed a Civil Remedy Notice of Insurer Violations on October 20, 2017. There she complained about the Defendant's failure to settle her UM policy claim in good faith,

in violation of § 624.155, Fla. Stat. She complained that the Defendant made no offer "despite there being only $100,000 in BI limits with about $150,000 in medical bills." In other words the Plaintiff complained that the Defendant, her UM insurer, was not paying $50,000 in UM benefits to cover that amount of her medical bills that exceeded the tortfeasor's bodily injury liability coverage. The Defendant answered the Civil Remedy Notice on December 4, 2017 denying that it acted in bad faith or handled the Plaintiff's claim improperly.

5. The Plaintiff filed suit against the Defendant in Florida state court on February 18, 2018. There the Plaintiff alleged a wide variety of personal injuries that she said resulted from the motor vehicle accident. She alleged suffering "bodily injury, resulting pain and suffering, disability, disfigurement, permanent impairment, mental anguish, loss of capacity of enjoyment of life, expense of medical care and treatment, aggravation of a condition, and loss of earnings." Those losses, the Plaintiff furthered, "are either permanent or continuing and she will continue to suffer the losses in the future." In that way the Plaintiff pleaded only categories of personal injury. She did not quantify them in terms of a specific dollar amount (except to plead that they exceed Florida state circuit court's $15,000 jurisdictional threshold). She

attached to her Complaint the Civil Remedy Notice of Insurer Violations that she had sent the Defendant beforehand, on October 20, 2017.

6. As for what the face of the Complaint and its attachment shows, the value of the Plaintiff's claim fairly could be construed to be $50,000. It also leaves open the possibility that the amount in controversy is more than $50,000 if there are damages in addition to the reported medical bills, but the amount of any additional compensatory damages is wholly speculative on this Court's part. Presumably the $100,000 UM policy limit thereby limits the maximum amount of damages (other than fees and costs) that the Plaintiff could recover. As a speculative exercise, therefore, the Complaint implies a range of $50,000 to $100,000 for what the amount in controversy could be. For instant purposes, however, only the non-speculative $50,000 valuation counts.

7. On June 12, 2018 the Plaintiff produced in discovery medical bills of more than $150,000. The Plaintiff's medical bill claim had increased very little since the $147,000 claim from the year before.

8. On August 28, 2018 the Defendant offered to pay the Plaintiff the full $100,000 UM policy benefit to settle the lawsuit. The Plaintiff rejected the offer. The rejection implies

that the Plaintiff values her claim above the full $100,000 UM policy benefit. That would mean that the Plaintiff is asserting damages that exceed both what the tortfeasor's bodily insurance policy already had paid and the Defendant's offer of the full UM policy benefit.

9. The Defendant's offer to tender the UM policy's $100,000 limit prompted the Plaintiff on September 18, 2018 to amend her Complaint. As she explains in her Motion for Leave to Amend Complaint, she seeks to add a bad faith claim. She complains that the Defendant's initial refusal to pay the UM policy limit forced her to file the lawsuit to recover "benefits that were rightfully due under the Policy."

10. The Plaintiff attaches to her Motion the Amended Complaint that she seeks to file. It contains no changes in how she pleads her claim for UM benefits (other than to designate it now as "Count I"). The Plaintiff still does not quantify in a specific dollar amount how much the Defendant should pay her on her UM policy claim (other than to plead that it exceeds Florida state circuit court's $15,000 jurisdictional threshold). The only substantive change is the newly added Count II which alleges statutory bad faith. There she pleads that the Defendant initially had denied that her injuries exceed the tortfeasor's bodily injury coverage limit, but then on August 28, 2018 the

Defendant changed course and "admitted that [her] damages meet or exceed the Policy's UM limits". Again the Plaintiff still does not quantify as a specific dollar amount what her damages are. The implication, however, is that the amount that Count I places into controversy is the full $100,000 UM policy limit if the Defendant's settlement offer is accepted as a reliable valuation of it. As for Count II---the bad faith count---it is prematurely raised, and thus has no value of its own. Therefore it does not increase the amount that the Plaintiff's lawsuit places into controversy. See Marquez v. State Farm Mut. Auto. Ins. Co., 2014 WL 2968452 (M.D.Fla. 2014).

11. On October 16, 2018 the Defendant removed the lawsuit to this federal court. The Defendant says that it was the Plaintiff's Motion for Leave to Amended Complaint that first made clear that the amount in controversy exceeds the $75,000 federal jurisdiction threshold of 28 U.S.C. § 1332. Indeed "the Motion for Leave to Amend Complaint reveals that Plaintiff sues for an amount that exceeds $100,000", as the Defendant presents it in its Notice of Removal. Repeating that same point, the Defendant concludes its Notice of Removal by asserting that "the amount in controversy exceeds $75,000 . . . based on the Motion for Leave to Amend Complaint where Plaintiff acknowledges [the Defendant's] offer of $100,000, but attempts to sue for bad

faith based on the argument that [the Defendant forced her] to file the instant lawsuit in order to receive the benefits that were rightfully due under the Policy."

12. Although the Plaintiff asks to add the bad faith claim (as Count II), she seeks to do so with the proviso that it be abated pending resolution of her claim for policy coverage (Count I), citing Fridman v. Safeco Ins. Co. of Illnois, 185 So.3d 1214 (Fla. 2016). The Defendant opposes the addition of the bad faith claim altogether. The Defendant argues that federal procedural law does not permit the pleading of an unripe claim even if abated.

**DISCUSSION**

13. The first issue this Court addresses is whether the Defendant timely sought removal once it saw a reason to invoke federal subject matter jurisdiction. Or, expressed in a way specific to the context of this case, whether the Defendant timely acted once it had sufficient reason to believe that the amount in controversy exceeds $75,000. For purposes of the below legal analysis, this Court's discussion of removability is limited to the amount in controversy context.

14. Title 28 U.S.C. § 1446(b) provides the governing standard. It gives a defendant 30 days to act, and it creates two events that trigger that 30-day clock to run. The first

triggering event is the defendant's receipt of the initial pleading. See § 1446(b)(1). However if the initial pleading does not demonstrate removability (by showing the amount in controversy to exceed $75,000, for example), then the second triggering event is the defendant's receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." See § 1446(b)(3). Documents that may trigger the (b)(3) clock to run include those from the state court proceeding or answers to discovery requests to the extent those two categories of documents inform what the amount in controversy is. See § 1446(c)(3)(A).

15. This Court turns next to interpretive case law. The greater weight of the case law prefers a "bright-line" application of § 1446(b). See Filippone v. CP Clearwater LLC, 2018 WL 5874141 (M.D.Fla. 2018), Furno v. JPMorgan Chase Bank, NA, 2018 WL 6620318 (S.D.Fla. 2018), Sullivan v. Nat'l Gen. Ins. Online, Inc., 2018 WL 3650115 (M.D.Fla. 2018), Perez-Malo v. First Liberty Ins. Corp., 2017 WL 7731958 (S.D.Fla. 2017), Armstrong v. Starwood Hotels & Resorts Worldwide, Inc., 2017 WL 1501385 (M.D.Fla. 2017), Farrey's Wholesale Hardware Co., Inc. v. Zurich Am. Ins. Co., 2016 WL 7437939 (S.D.Fla. 2016), Thompson v. Columbia Sussex Corp., 2016 WL 6134868 (M.D.Fla.

2016), Walnut Ave. Partners, LLC v. Big B Cleaners of Dalton, Inc., 2012 WL 13028698 (N.D.Ga. 2012), Benstock v. Arrowood Indem. Co., 2011 WL 6314236 (M.D.Fla. 2011), Fermaintt v. Home Depot USA, Inc., 2008 WL 11332008 (S.D.Fla. 2008). See also, Entrekin v. Fisher Scientific Inc., 146 F.Supp.2d 594 (D.N.J. 2001) (providing an early application of the "bright-line rule" and explanation for why it is preferred).

16. From the above case law this Court distills what the bright-line rule entails. When applying the first triggering event of (b)(1), a court should look only at what the plaintiff pleads in the initial pleading. A court should consider no other document or correspondence between the parties. Consequently if removability is not clear on the face of the initial pleading, then the defendant is not subject to the 30-day clock of (b)(1). This holds true even if the defendant otherwise knows or should have known subjectively what the amount in controversy is (such as from pre-suit settlement negotiations). If at some later point the defendant learns about a basis for removal, then subsection (b)(3) opens another 30-day window to take action. The (b)(3) clock begins to run upon: (1) the defendant's receipt of something in writing, (2) that the defendant receives after the initial pleading, and (3) that clearly and plainly shows what the amount in controversy is. The bright-line rule thereby

seeks to balance the requirement for early removal against the need to allow the defendant to wait until removability becomes clear (and defendable if the plaintiff contests it with a remand motion)[1].

17. Applying § 1446(b) and the bright-line rule to this case, this Court finds that that the first triggering event of § 1446(b)(1) does not apply. The bright-line rule limits this Court's consideration to the face of the initial Complaint and to the Civil Remedy Notice attached to it[2]. That pleading does not clearly and affirmatively show that the amount in controversy exceeds $75,000. Instead, as this Court explains above at ¶6, the Plaintiff's Complaint placed at issue only $50,000. That is the amount of the Plaintiff's claim that

---

[1] The bright-line rule gives a defendant the benefit of a clear record with which to work, but that does not mean a defendant may bury "its head in the proverbial sand regarding the amount in controversy when a complaint can be fairly interpreted to allege damages in excess of the jurisdictional amount, even when no damages amount is specifically pled." Capitini v. Balfour, 2019 WL 587180 (S.D.Fla. 2019). There is the possibility that the amount in controversy may be so obvious that it affects how the bright-line rule should be applied. To that limited extent the "intelligently ascertainable" point of inquiry still may be relevant to the analysis. Cf. Bankston v. Ill. Nat'l Ins. Co., 443 F.Supp.2d 1380 (M.D.Fla. 2006), Flores v. SE Mechanical Contractors, LLC, 2010 WL 11597926 (S.D.Fla. 2010), and Fernandez v. Travelers Home & Marine Ins. Co., 2017 WL 8315921 (M.D.Fla. 2017). It does not affect the analysis in this case, however. On this record this Court sees no wrongful delay by the Defendant in its pursuit of removal. To the contrary the Defendant's amount-in-controversy assertion rests on the minimum of evidence.

[2] As shown by the Order found at page 62 of DE 1-2, the state court later struck the attached Civil Remedy Notice from the Complaint. This Court does not find that later striking to affect the § 1446(b)(1) timeliness analysis under the bright-line rule.

remains unpaid after the tortfeasor's insurer paid the full $100,000 value of his personal injury liability policy. That is, the excess amount for which the UM insurer---the Defendant---is potentially liable under the UM policy.

18. This Court does not agree that ¶5 of the Complaint makes clear that the Plaintiff is suing for $100,000 (or even for an amount of damages above $75,000). There at ¶5 the Plaintiff pleads that, "at the time of the crash [the tortfeasor] had insurance which was insufficient to compensate [her] for all of her damages. With the permission of Defendant Travelers and waiver of [its] subrogation rights," the Plaintiff settled with the tortfeasor. While that text pleads the basis for the Plaintiff's claim to UM benefits---that she has damages that remain uncompensated after the payment by the tortfeasor's insurer---it does not say what the amount of her claim is. Nor does the text expressly say that it is the full amount of the UM policy benefit that is at stake. The best that can be inferred from the Complaint and its attachment is that she is suing for $50,000 of UM policy coverage (which falls short of the $75,000 jurisdictional threshold).

19. This Court does not find Marquez v. State Farm Mut. Auto. Ins. Co., 2014 WL 2968452 (M.D.Fla. 2014), on which the Plaintiff relies, to support remand. It is distinguishable in

two important respects. First it addresses whether that defendant met its burden of establishing the amount in controversy. In other words it addresses whether the defendant could substantiate its claim of federal subject matter jurisdiction on the merits. That is a different point of inquiry. At issue here is whether the Defendant's Notice of Removal is timely---a procedural defect---which entails a different analysis. Second Ms. Marquez was suing to recover a $100,000 UM benefit after receiving $10,000 from the tortfeasor's insurer for potential damages up to $613,000. In other words Ms. Marquez substantiated her claim that the UM insurer potentially owed her the full policy amount (which exceeded $75,000). Here, the Plaintiff's Complaint suggests a claim for no more than $50,000 in UM benefits.

20.  Instead it is the second triggering event of § 1446(b)(3) that is dispositive. This Court agrees with the Defendant that the Plaintiff's Motion for Leave to Amend Complaint and its attached proposed Amended Complaint was the first written paper that the Defendant received from the Plaintiff informative of the amount in controversy. Moreover that combined document (the Motion for Leave to Amend Complaint and the attached Amended Complaint) contains sufficient notice---albeit at the very minimum---to inform the Defendant that the

amount in controversy may exceed $75,000. In practical effect that filing took the Defendant's $100,000 offer---which was something that the Defendant had sent to the Plaintiff---and converted it into a written paper that the Defendant now <u>received</u> from the Plaintiff. That conversion thereby made the Defendant's $100,000 offer relevant to the § 1446(b) timeliness analysis under the bright-line rule. That filing therefore constituted the kind of notice that triggers the § 1446(b)(3) clock to run.

21. To be clear, it is not the fact that the Plaintiff expressly pleaded a claim for the full $100,000 UM policy benefit that is dispositive. Merely pleading the policy limit alone does not establish the amount in controversy. See <u>Fernandez v. Am. Security Ins. Co.</u>, 2009 WL 3418254 (M.D.Fla. 2009). Rather it is the Plaintiff's reference to the Defendant's offer of the full policy limit that is dispositive. That is because the Defendant's offer provides a valuation of the Plaintiff's claim.

22. For the above reasons this Court finds that the Defendant timely filed its Notice of Removal within the time frame created by § 1446(b). Consequently this Court denies the Plaintiff's Motion to Remand in which she argues for remand based on the procedural objection of untimeliness. This Court

also denies the Plaintiff's Amended Rule 11(c)(2) Motion for Sanctions which rests on the same timeliness dispute. To clarify, this Court limits its consideration to the timeliness issue only. This Court does not consider the substantive question of whether the Defendant meets its burden of demonstrating what the amount in controversy actually is. Whether the Defendant can defend its assertion of removability and federal subject matter jurisdiction is an entirely different inquiry. See, e.g., Judon v. Cumberland Farms, Inc., 2017 WL 7732131 (S.D.Fla. 2017) (setting forth the standard that a removing defendant must meet to demonstrate the amount in controversy). See also, Filippone and Perez-Malo, supra (same).

23. Having found no procedural defect with the Notice of Removal, this Court now considers the Plaintiff's Motion for Leave to Amend Complaint on its merits. Her claim of statutory bad faith is premature. Conceding that point the Plaintiff asks that the bad faith claim be held in abatement pending resolution of the coverage dispute claim. While abatement is an available procedural device and many district courts employ it, this Court finds the contrary case law more persuasive. For the reasons expressed in Aligned Bayshore Holdings, LLC v. Westchester Surplus Lines Ins. Co., 2018 WL 6448632 (S.D.Fla. 2018) and Cowan v. Provident Life & Accident Ins. Co., 2018 WL 7577756

(S.D.Fla. 2018), this Court denies the Plaintiff's Motion for Leave to Amend Complaint. Because the bad faith claim never was actually pleaded formally, then technically speaking there is no need to dismiss it without prejudice to re-assert when it does become ripe.

24. Lastly this Court addresses the need for the parties to confer and prepare a new, updated Joint Scheduling Report. The Joint Scheduling Report shall comply with the content requirements of Local Rule 16.1 and Rule 26(f), Fed.R.Civ.P., to the extent relevant to the present posture and needs of this case. The parties shall propose a new trial date that provides sufficient time for completing discovery and for writing summary judgment motions. The parties shall include one month between the discovery and dispositive motions deadlines and three months between the dispositive motion deadline and the proposed trial date. This is the parties' opportunity to figure out in a realistic and practical sense how much time is needed to develop this case and ready it for trial. The parties shall specify whether this is a jury or bench trial, and they shall estimate the length of trial including jury selection. (In estimating the length of trial the parties shall keep in mind that this Court has a criminal duty court calendar every morning of unpredictable length but averaging one hour.)

Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that all three pending Motions (at DE 1-2, 8 and 13) are **DENIED**. It is further,

**ORDERED AND ADJUDGED** that the parties shall file their new, updated Joint Scheduling Report by **FRIDAY, APRIL 26, 2019.**

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 2nd day of April, 2019.

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE